HIGHT, Appellant, v. ROBBINS, Respondent.

1. As a general rule the master of a steamboat navigating the rivers of the west has authority to hire pilots and other subordinate officers for the whole of a boating season; such contracts, in the absence of any limitation upon the master's general authority by custom or otherwise, would be binding upon the owner.

*Appeal from St. Louis Court of Common Pleas.*

This was an action against the defendant as owner of the steamboat " Editor" to recover wages alleged to be due plaintiff under a contract entered into by him to serve as pilot on said boat. In April, 1856, the steamboat Editor was running

in the Upper Mississippi trade from St. Louis to St. Paul. James F. Smith was the master, and the defendant Robbins the owner. Said Smith hired the plaintiff to serve as pilot for the season of five months, at three hundred dollars per month. It was agreed that in case the Editor should lay up or for any reason cease to run as long as five months, then the plaintiff was to go on any other boat said Smith could find for him, or he, plaintiff, could get a chance to go on ; and the wages he should earn on such other boat were to be credited in his account with the Editor. Plaintiff continued on board the Editor as pilot until about the 1st of July, when the boat ceased running. Plaintiff was then paid his wages up to that time. After the expiration of the five months for which the plaintiff was hired, the plaintiff made a settlement with Smith, the master, and, after deducting in accord ance with the original agreement wages received by plaintiff for services rendered on other boats, it was found that the sum of four hundred dollars was due plaintiff. It was in evidence that each time the Editor came into port the defendant came down to the boat and received all her earnings. It also appeared that defendant was present when Captain Smith hired the other pilot of the Editor, who was hired about the same time and upon the same terms. He took part in the conversation and in making the contract. The court, at the instance of the defendant, instructed the jury as follows : " The jury is instructed that this suit is upon a special contract alleged by the plaintiff to have been made by the agent of the defendant ; and there is no proof before the jury tending to show that the agent had any authority to make such a contract, and the jury should therefore find for the defendant." The plaintiff thereupon took a nonsuit, with leave, &c.

*Henderson & Thomas* and *Hayden*, for appellant.

I. The instruction given was clearly wrong. There was evidence on which the jury might well have found for plaintiff even on the ground of direct, though implied authority

from the defendant to the captain to make the contract. The master is the authorized agent of the owner to hire the subordinate officers and crew of a boat or a vessel in a foreign or home port. (Story on Agency, § 116, 121, 300; Abbott on Shipping, 152, 216, 734, 794; Curtis on Merchant Seamen, 14, 18, 328.) Every mariner on his contract for service has a remedy against the owner as well as the maker, even though the owner took no part in the transaction and was unknown in it. This is so by the common law, (Waite v. Gibbs, 4 Pick. 298; 11 Johns. 72,) and by the admiralty law. (Gilp. 592; 3 Sumn. 286.)

*Grover*, for respondent.

I. No facts appeared in evidence from which the jury could legitimately infer or presume that defendant ever authorized Smith to make the contract sued on, or that defendant had any knowledge of its terms or conditions. No custom or usage was shown. The master can not bind the owner to pay for unemployed time or for services rendered upon other boats under the facts and circumstances disclosed in the pleadings and proofs in this case.

RICHARDSON, Judge, delivered the opinion of the court.

This case presents the question whether the master of a steamboat, within the duration of his own term of service, has the power to employ a pilot so as to bind the owner for a longer time than one trip of the boat.

The law is well settled that the master of a ship has the right to employ the mariners and appoint his subordinate officers either in the home or foreign port; but this power, it seems, is limited to a single voyage, and, though it is conceded that masters of steamboats have the same power, it is contended that it is limited to one trip of the boat. The ordinary voyage of a ship requires several weeks and most generally several months, whilst some of the boats, that navigate the waters of this state, make daily, some of them semi-weekly and weekly, trips; and few of them are out of

port more than twenty days at a time. And, arguing from analogy, as the master of a ship employs those under him for a voyage, it would be reasonable to say that the master of a steamboat has the incidental authority to employ his subordinates for an ordinary boating season. The popularity and success of a boat depend very much on the character of its officers. Customers are drawn to a boat by the known skill and reputation of its officers, and public confidence would never be given to a vessel that changed its clerks, pilots or engineers every trip; and the best officers—who can command constant employment and permanent situations—would not take a berth on a boat which they were liable to lose at the end of every trip.

The clerk ought to know the trade and customers of the boat; the pilot should not only be familiar with the river, but ought to know the habits of the boat and the particular manner of landing it; and an engineer is certainly safer and more competent when attending to machinery that he is accustomed to manage. It is not only for the interest of the public, but it is better for the owners, that this power should exist; for if the pilots or other officers could only be employed by the master for a single trip or voyage, they would seek indemnity for the risk of losing their places by an increased compensation.

The power of a master in the temporary service of the owners, and engaged himself for only a single trip, would not reach to the extent of contracting with a pilot for a greater length of time than his own term of service; but we think his authority, coëxtensive with the duration of his right to command the vessel, extended to the employment of a pilot for the whole of one boating season; and this power is deducible from the nature of his employment and the necessities of commerce. This may be stated as the general rule, subject, of course, to the right of the owner to man his vessel as he thinks proper, and to such exceptions as the particular circumstances of each case may create, and the express or implied incidents to the trade in which the boat may

be engaged. This implied authority may be affected by the usages or customs of a particular trade, but, in the absence of evidence of any modification of the general rule by well established custom, we are not called on to say how far it would yield if a boat should change owners, or be destroyed, or be compelled to lay up, or go into a different trade or river.

It is said that there is no evidence in the record of any usage on the subject, and that we ought therefore to apply by analogy the law governing ships on the high seas to steamboats on the western rivers ; but every one knows that many rules govern the navigation of the ocean that are inapplicable to the navigation of our rivers. Law is founded on reason, and, springing out of the necessities of society and the wants of commerce, it adapts itself with a wise flexibility to the new developments of trade and the increased and diversified interests of communities. An expanding and enriching commerce has grown up on the great rivers that bound and intersect this state, which has become an important and leading interest that ought not to be crippled by arbitrary rules that belong to another system, but it should be fostered by wise laws suggested by experience and adpated to its character and peculiar wants. We can not shut our eyes to the leading principles which, as individuals, we know govern it and have grown up with it ; but the courts will take notice of such general customs as are founded in reason and enlightened public policy.

It appears from the evidence that the plaintiff was employed by the master as pilot of the defendant's boat for the term of five months, and that the master continued in command of the boat until after the expiration of the term for which the pilot was engaged ; and as we think the master had authority to make the contract so as to bind the defendant, the instruction which the court gave that forced the plaintiff to take a nonsuit was erroneous.

The judgment will be reversed and the cause remanded ; the other judges concurring.